# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOBA L.M.,<br><br>    Petitioner,<br><br>    v.<br><br>TONYA ANDREWS, et al.,<br><br>    Respondents. | Case No. 1:25-cv-00611-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, GRANT RESPONDENT'S MOTION TO DISMISS AND STRIKE UNLAWFULLY NAMED RESPONDENTS, DENY RESPONDENT'S MOTION TO DISMISS, AND DIRECT RESPONDENT TO PROVIDE PETITIONER WITH BOND HEARING BEFORE IMMIGRATION JUDGE<br><br>(ECF Nos. 10, 12) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a transgender woman and longtime lawful permanent resident who came to the United States from El Salvador in 2008 at the age of twelve. (ECF No. 1 at 2; ECF No. 1-3 at 2–3, 6–7.[1]) In 2020, Petitioner was convicted of lewd act on a child under the age of fourteen and

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

1 possession of child pornography. (ECF No. 1 at 8; ECF No. 1-3 at 252–56; ECF No. 20-1 at 6–17.) Petitioner was sentenced to imprisonment terms of six years and one year, to run concurrently. (Id.) The California Board of Parole Hearings determined that Petitioner was appropriate for early release, and Petitioner was released from state custody one year early, on November 26, 2023. (ECF No. 1 at 9; ECF No. 1-3 at 258.)

On January 17, 2024, the Department of Homeland Security ("DHS") initiated removal proceedings, charging Petitioner as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. (ECF No. 1-3 at 37.) That same day, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") officers and transported to the Golden State Annex. (ECF No. 1 at 10; ECF No. 1-3 at 13, 25.) On May 9, 2024, Petitioner filed an application for protection under the Convention Against Torture ("CAT"). (ECF No. 1 at 10; ECF No. 1-3 at 41–54.) On May 1, 2025, the immigration judge ("IJ") issued an oral decision, finding Petitioner removable and denying all relief. (ECF No. 1 at 10; ECF No. 1-3 at 274–77.)

On May 6, 2025, Petitioner filed a notice of appeal to the Board of Immigration Appeals ("BIA"). (ECF No. 1 at 10; ECF No. 1-3 at 279–82.) The parties' appeal briefs were due on August 15, 2025, and the matter is currently pending before the BIA. (ECF No. 15-1 at 2.)

On May 22, 2025, Petitioner filed the instant petition for writ of habeas corpus, challenging her prolonged immigration detention on procedural due process grounds. (ECF No. 1.) On June 23, 2025, Respondents filed a motion to dismiss and strike unlawfully named Respondents. (ECF No. 10.) On August 1, 2025, Respondents filed a motion to dismiss and response to the petition. (ECF No. 12.) On August 22, 2025, Petitioner filed an opposition to the motion to dismiss and traverse. (ECF No. 15.)

**II.**

**DISCUSSION**

**A. Proper Respondents**

Respondents move to dismiss and strike unlawfully named Respondents. (ECF No. 10.) "[L]ongstanding practice confirms that in habeas challenges to present physical confinement— 'core challenges'—the default rule is that the proper respondent is the warden of the facility

2

where the prisoner is being held . . . ." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024).

> The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; see also § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained"). The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition.

Padilla, 542 U.S. at 434. Accord Doe, 109 F.4th at 1195 ("The plain text of the federal habeas implementation provision delineates that petitions must include the name of 'the' person maintaining custody over the petitioner, *id.*, implying that there is typically only one proper respondent to a habeas petition."); id. ("Congress chose to use a definite article, 'the,' to make clear that only one person can be said to maintain custody over the detained petitioner, and that person is the proper respondent to a core habeas challenge.").

Based on the foregoing, the Court finds that Tonya Andrews, the facility administrator of Golden State Annex, is the proper Respondent in this matter. Accordingly, the Court recommends that Respondent's motion to dismiss and strike unlawfully named Respondents be granted.

**B.  Overview of Caselaw Regarding Immigration Detention Statutes**

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in

removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" Avilez, 69 F.4th at 529 (alteration in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Id. "Subsection C provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Id. at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)). "[D]etention under Subsection C is mandatory," and "[r]elease under Subsection C is limited to certain witness protection purposes." Id. "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31.

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)). In Zadvydas v. Davis, 533 U.S. 678 (2001), two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

///

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter").[2] However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under § 1226(c), specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural

---

[2] "Thirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors.'" Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). Although the "Supreme Court had inferred from the government's brief in Demore that in cases in which the alien appeals, the time of detention was 'about five months,'" the government's 2016 letter clarified that for years 1999–2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Id. (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in Demore. The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days.

Rodriguez, 2019 WL 7491555, at *5 (citations omitted).

requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).³ Rodriguez II, 715 F.3d at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)).

In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court rejected the Ninth Circuit's interpretation that §§ 1225(b) and 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" and reversed Rodriguez III, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at 296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Following Jennings, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed on other grounds, Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising

---

³ In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh, 638 F.3d at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. Id.

from the Third Circuit, *Johnson v. Arteaga-Martinez*, [596] U.S. [573], 142 S. Ct. 1827, 213 L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman Gonzalez*," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community," Arteaga-Martinez, 596 U.S. at 581. Arteaga-Martinez declined to reach the constitutional claims. Id. at 583.

"[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remain[ed] undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute" until the Ninth Circuit's decision in Rodriguez Diaz, which concerned a petitioner detained pursuant to 8 U.S.C. § 1226(a) who sought a second bond hearing before an IJ at which the government would bear the burden of proof by clear and convincing evidence. Rodriguez Diaz, 53 F.4th at 1201, 1193. The Ninth Circuit held that "due process does not require the procedures Rodriguez Diaz would have us impose" because "Section 1226(a) offers substantial procedural protections to detained persons, and Rodriguez Diaz has not shown that these procedures violate due process, either facially or as applied." Id.

Here, Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c). See Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due process requires a bond hearing for aliens detained under § 1226(c) is not before us today. And we take no position on that question."), vacated and remanded on other grounds, 144 S. Ct. 1339 (2024); Avilez, 69 F.4th at 538 (declining to make a determination on whether due process required a bond hearing for noncitizen detained under § 1226(c) and remanding to district court for consideration of due process claim). However, the Ninth Circuit has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending

7

1 removal proceedings, without a bond hearing, will—at some point—violate the right to due
2 process.'" Martinez, 36 F.4th at 1223 (citation omitted).

### C. Procedural Due Process

1. Motion to Dismiss

Respondent asserts that in the petition's sole claim, "Petitioner falsely claimed that Fifth Amendment substantive due process compels a detention hearing, bond, and immediate release." (ECF No. 12 at 3.) Respondent contends that "Petitioner is flatly wrong in claiming *Demore v. Kim,* 538 U.S. 510, 523 (2003), supports consideration of the length of detention as a factor for substantive due process violation." (Id.) However, Petitioner is not pursuing a substantive due process claim but rather a procedural due process claim. (ECF No. 1 at 26.)

Demore rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c) and "said nothing about whether due process may *eventually* require a hearing." Black v. Decker, 103 F.4th 133, 149 (2d Cir. 2024). In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court explicitly stated that as-applied constitutional challenges to 8 U.S.C. § 1226(c) are not foreclosed. Preap, 586 U.S. at 420. Therefore, Demore does not preclude relief.

Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), the First, Second, and Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted). Accord Black, 103 F.4th at 138 ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209–10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Contra Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024). Additionally, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate

the right to due process.'" Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019) (citation omitted), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

Based on the foregoing, the Court will follow this line of cases and find that unreasonably prolonged mandatory detention under 8 U.S.C. § 1226(c) without an individualized bond hearing violates due process. Accordingly, the Court recommends that Respondent's motion to dismiss the petition be denied. The Court now turns to whether Petitioner's detention has become unreasonably prolonged such that due process requires a bond hearing.

    2. *Lopez* Test

Courts in this circuit have taken various approaches to determining whether procedural due process requires a bond hearing in a particular case. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-factor test that considers "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above in § 1226(c) context (alteration in original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying Mathews v. Eldridge test to petitioner's due process claim requesting initial bond hearing in § 1226(c) context).

In the petition, Petitioner applies the Mathews v. Eldridge, 424 U.S. 319 (1976), test. (ECF No. 1 at 20–24.) Respondent addresses the Mathews factors in the motion to dismiss but argues that this Court "should follow precedent rejecting utilization of a multi-factor balancing

9

1  (*Mathews*) test to assess so-called as-applied (substantive) due process violation claims," citing
2  to Keo v. Warden, No. 1:24-cv-00919-HBK (HC), 2025 WL 1029392, (E.D. Cal. Apr. 7, 2025).
3  (ECF No. 12 at 5–6.) Keo is not binding in this matter. See Camreta v. Greene, 563 U.S. 692,
4  709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a
5  different judicial district, the same judicial district, or even upon the same judge in a different
6  case." (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.
7  2011)).

8  This Court previously found that "[t]o determine whether § 1226(c) detention has become
9  unreasonable, the Court will look to the total length of detention to date, the likely duration of
10 future detention, and the delays in the removal proceedings caused by the petitioner and the
11 government." Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (noting Mathews
12 factors more suited to determining whether due process requires a second bond hearing and
13 rejecting other multi-factor tests). The Court will apply the three Lopez factors.

### a. Total Length of Detention to Date

Petitioner has been in immigration detention since January 17, 2024—almost twenty-one months. Courts have found shorter lengths of mandatory immigration detention without a bond hearing to be unreasonable. See, e.g., Black, 103 F.4th at 137–38 (affirming district court judgment ordering bond hearing for petitioner detained seven months); Perera v. Jennings, No. 21-cv-04136-BLF, 2021 WL 2400981 (N.D. Cal. June 11, 2021) (granting TRO and ordering individualized bond hearing for petitioner detained almost two months); Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1, 11 (S.D.N.Y. May 23, 2018) (granting preliminary injunction and ordering individualized bond hearing for petitioner detained more than eight months); Jarpa v. Mumford, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (granting habeas relief and ordering individualized bond hearing for petitioner detained nearly eleven months).

"In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (alteration in original) (quoting Muse v.

1  Sessions, 409 F. Supp. 3d 707, 716 (D. Minn. 2018)). Here, Petitioner has been detained for
2  approximately one year and nine months. Accordingly, the Court finds that the total length of
3  detention factor weighs in favor of Petitioner.

### b. Likely Duration of Future Detention

"[A]s have nearly all the other courts to consider this issue . . . the starting point of the analysis is the length of detention—both how long the petitioner has been detained and *how long the detention is likely to last*." Gonzalez, 2019 WL 330906, at *5 (emphasis added) (collecting cases). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." German Santos, 965 F.3d at 211.

Here, the deadline to submit appeal briefs to the BIA was August 15, 2025, and the appeal is still pending. (ECF No. 15-1 at 2.) Petitioner's counsel has submitted a declaration, stating:

> As of the date of this declaration [August 22, 2025], the BIA has not issued a decision in the appeal. The BIA often takes six months or more to decide appeals pending before it in detained cases.
>
> If the BIA decides in Loba's favor, her case will likely be remanded to the IJ for further proceedings, which will last at least several months more. If the BIA dismisses Loba's appeal, she will likely file a petition for review with the U.S. Court of Appeals for the Ninth Circuit, which will take months or years to decide. Either way, Loba's case is expected to continue for many more months or even years.

(ECF No. 15-1 at 2–3 (paragraph numbers omitted).)

Although future events are difficult to predict, the Court nevertheless finds that the pending appeal before the BIA and possible remand to the immigration court for further proceedings or possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner. See German Santos, 965 F.3d at 212 (finding appeal of cancellation of removal order with the BIA "could take months" and potential review in the Third Circuit "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"); Banda, 385 F. Supp. 3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer and favors granting petitioner a bond hearing).

### c. Delays in Removal Proceedings Caused by Petitioner and Government

At the first master calendar hearing on January 25, 2024, Petitioner received a continuance to seek counsel. (ECF No. 15 at 19.) At the second master calendar hearing on March 6, 2024, Petitioner's immigration counsel requested and received a continuance to obtain the information necessary to enter pleadings. (Id.) At the third master calendar hearing on April 3, 2024, the IJ sustained the charge of removability, and counsel indicated that Petitioner would file an application under CAT. (ECF No. 15-2 at 2–3.) The IJ set a May 2, 2025 deadline for the application and initially set a master calendar hearing for May 8 that was quickly moved to May 15 due to Petitioner's counsel having an in-person hearing in San Francisco on May 8. (Id. at 4–6.) At the fourth master calendar hearing on May 15, 2024, the IJ noted she was "exceedingly, exceedingly booked" and scheduled the individual calendar hearing on the CAT application for June 27, 2024. (Id. at 10.)

The individual calendar hearings on Petitioner's CAT application took place on June 27, 2024, August 20, 2024, August 27, 2024, October 10, 2024, December 5, 2024, January 30, 2025, and March 5, 2025. (ECF No. 1-3 at 29.) On May 1, 2025, the IJ issued an oral decision, finding Petitioner removable and denying all relief. (ECF No. 1 at 10; ECF No. 1-3 at 274–77.)

On May 6, 2025, Petitioner filed a notice of appeal to the BIA. (ECF No. 1 at 10; ECF No. 1-3 at 279–82.) On June 18, 2024, the BIA issued a transcript of Petitioner's immigration court proceedings and set a briefing schedule with a July 9, 2025 deadline for both parties. (ECF No. 12-1 at 17; ECF No. 15-1 at 2.) On June 30, 2025, Petitioner moved for an extension of time, and on July 2, 2025, the BIA granted the motion, extending the deadline to July 30, 2025. (ECF No. 12-1 at 21–23; ECF No. 15-2 at 25.) Petitioner's immigration counsel subsequently "alerted the BIA that the transcript it had provided of Loba's immigration court proceeding omitted a significant portion of the hearings." (ECF No. 15-1 at 2.) On July 25, 2025, the BIA issued a corrected, complete transcript and reset the briefing schedule. The new deadline was August 15, 2025. (ECF No. 15-1 at 2; ECF No. 15-2 at 22.)

///

///

Respondent argues:

> From onset of civil detention (1/17/2024), Petitioner -- through demands for continuances, motions, and counsel preparation -- delayed immigration court proceedings and prolonged detention. *Id.* In fact, in advance of evidentiary hearing on Petitioner's claims of relief from removal, Petitioner received four continuances for case preparation and counsel: on 1/15/2024; 3/6/2024, 4/3/2024, and 5/15/2024. At the 4/3/2024 hearing, an Immigration Judge found Petitioner removable. On 5/1/2025, an Immigration Judge denied Petitioner's demands for relief from removal and ordered Petitioner removed. *See* Decl. p 3. *See also* Decl. Exh. 5.
>
> From the 5/15/2024 Immigration Court hearing (at which Petitioner demanded a continuance for case preparation and for preparation of counsel) through the 5/1/2025 Immigration Judge order (that Petitioner be removed), Petitioner's case was continued seven times. Specifically, each continuance, occurring on 6/27/2024, 8/20/2024, 8/27/2024, 10/10/2024, 12/5/2024, 1/30/2025, and 3/5/2025, was for evidentiary hearing adjudication of Petitioner's demands for relief from removal.

(ECF No. 12 at 2.) However, as noted by Petitioner, (ECF No. 15 at 19), Petitioner requested two continuances—on January 25, 2024 to seek counsel and on March 6, 2024 to enable new counsel to obtain information to enter pleadings. The continuances on April 3 and May 15, 2025, "were at the IJ's own initiative, and based on her own scheduling method: she first scheduled a master calendar hearing for submission of the CAT application, and only after the application was submitted scheduled an evidentiary individual calendar hearing ('ICH')." (ECF No. 15 at 19.)

To the extent Respondent argues that Petitioner's adjudication of her CAT application should weigh against Petitioner, "the mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition." Hernandez v. Decker, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018). See Liban M.J. v. Sec'y of Dep't of Homeland Sec., 367 F. Supp. 3d 959, 965 (D. Minn. 2019) ("Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable."); Gonzalez, 2019 WL 330906, at *4 ("The government cites no authority for the proposition that a petitioner who pursues his available legal remedies must forego any challenge to the reasonableness of his detention in the interim and the Court is unaware of any.").

///

Respondent appears to further argue that the seven continuances "for evidentiary hearing adjudication of Petitioner's demands for relief from removal" should also weigh against Petitioner. (ECF No. 12 at 2.) However, Petitioner's immigration counsel has declared:

> Despite my good-faith attempts to narrow the issues and repeated requests for guidance from the IJ on which particular elements of Loba's claim remain at issue, the IJ refused to provide any guidance, and instead took up hours of the hearings in her own questioning of witnesses. Additionally, because of the IJ's calendar, Loba often had to wait nearly two months from one hearing to the next. The number of merits hearings and long delay in this case is nearly unprecedented in my eight years of representing detained clients in Immigration Court.

(ECF No. 1-3 at 28–29.) Additionally, at the first ICH on June 27, 2024, the government refused to accept the declaration of the country conditions expert and requested to cross-examine the expert. (Id. at 29.) Thus, the IJ continued the matter for the expert's testimony, which ultimately took more than six hours across three hearings. (Id.) "[T]he operative question should be whether the alien has been the cause of delayed immigration proceedings and, where the fault is attributable to some entity other than the alien, the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable." Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

Petitioner requested and received two continuances in immigration court. Although Respondent points to seven continuances "for evidentiary hearing adjudication of Petitioner's demands for relief from removal," (ECF No. 12 at 2), the IJ's refusal to provide guidance to assist Petitioner's counsel in narrowing the issues, the government's refusal to accept the expert's declaration, and the IJ's busy calendar also contributed to the delay and continuances. Additionally, while Petitioner requested and received a continuance on the BIA briefing, the BIA's incomplete transcript contributed to further delay. Accordingly, the Court finds that the delay factor is neutral.

### d. Weighing the Factors

The Court appreciates that the government has a strong interest in enforcing immigration laws, ensuring the presence of noncitizens at their removal proceedings, and protecting the public from danger. However, the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain [Petitioner] *without a bond*

1 *hearing.*" Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D.
2 Or. Mar. 25, 2020) (emphasis added), report and recommendation adopted, 2020 WL 1855189
3 (D. Or. Apr. 13, 2020). See Henriquez, 2022 WL 2132919, at *5 ("Although the Government has
4 a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal
5 orders are promptly executed, the Government's interest in detaining Petitioner without
6 providing an individualized bond hearing is low."). On the other hand, it "is beyond dispute" that
7 Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir.
8 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—
9 from government custody, detention, or other forms of physical restraint—lies at the heart of the
10 liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Both the length of
11 detention to date, "which is the most important factor," Banda, 385 F. Supp. 3d at 1118,[4] and the
12 likely duration of future detention weigh in favor of finding continued detention unreasonable.
13 The delay factor is neutral. Accordingly, the Court finds that Petitioner's continued detention has
14 become unreasonable and due process requires that Petitioner be provided a bond hearing.

**D. Remedy**

16 "The Court finds, consistent with other post-Jennings cases, that the appropriate remedy
17 is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. The Court
18 further finds that "the government must prove by clear and convincing evidence that an alien is a
19 flight risk or a danger to the community to justify denial of bond" and that the bond hearing must
20 comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).
21 See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted
22 that the government bore the burden to establish by clear and convincing evidence that Martinez
23 is a danger to the community" with respect to a bond hearing for a noncitizen detained under
24 § 1226(c)); Black, 103 F.4th at 159 (affirming district court's order "requir[ing] the government
25 to show at such a bond hearing, by clear and convincing evidence, the need for Black's
26 continued detention" under § 1226(c)); German Santos, 965 F.3d at 214 (holding that in order to
27 justify a noncitizen's continued detention under § 1226(c) "the Government bears the burden of

---

[4] Accord German Santos, 965 F.3d at 211 ("The most important factor is the duration of detention.")

15

persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community"); Juarez, 2021 WL 2323436, at *8 (requiring bond hearing to comport with requirements of Singh); Banda, 385 F. Supp. 3d at 1120–21 (same); Djelassi v. ICE Field Off. Dir., 434 F. Supp. 3d 917, 923–24 (W.D. Wash. 2020) (same); Martinez, 2019 WL 5968089, at *11 (same and collecting cases).

In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. See Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ('IJ'), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

## III.

## RECOMMENDATIONS

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondent's motion to dismiss and strike unlawfully named Respondents (ECF No. 10) be GRANTED.
3. Respondent's motion to dismiss the petition (ECF No. 12) be DENIED.
4. Respondent provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

1    This Findings and Recommendation is submitted to the assigned United States District 2 Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local 3 Rules of Practice for the United States District Court, Eastern District of California. Within 4 **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file 5 written objections with the Court, **limited to fifteen (15) pages in length, including any** 6 **exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and 7 Recommendation." Replies to the objections shall be served and filed within fourteen (14) days 8 after service of the objections. The assigned District Judge will then review the Magistrate 9 Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file 10 objections within the specified time may waive the right to appeal the District Court's order. 11 Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 12 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **October 16, 2025**

STANLEY A. BOONE
United States Magistrate Judge