**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOBA L.M. aka D.A.L.M., | Case No. 1:25-cv-00611-JLT-SAB |
| Petitioner, | ORDER DENYING PETITIONER'S MOTION TO ENFORCE; DENYING PETITIONER'S REQUEST FOR A TEMPORARY RESTRAINING ORDER |
| v. | |
| TONYA ANDREWS, et al., | (Docs. 28, 29) |
| Respondents. | |

## I.    INTRODUCTION

Loba L.M., a lawful permanent resident, has been in the custody of United States Immigration and Customs Enforcement for over two years. On November 14, 2025, this Court granted Petitioner's petition for a writ of habeas corpus and ordered Respondents to (1) provide Petitioner for an individual bond hearing and (2) at the hearing, prove by clear and convincing evidence that Petitioner's continued detention is justified. (Doc. 26 at 3.) Petitioner received the ordered bond hearing. On December 15, 2025, an Immigration Judge determined that Petitioner's continued detention is justified. Petitioner now argues that the IJ failed to comply with this Court's writ of habeas corpus. Currently pending before the Court is Petitioner's (1) motion to enforce this Court's writ of habeas corpus and (2) request for a temporary restraining order granting her immediate release. (Docs. 28, 29.) For the reasons explained in further detail below, the Court **DENIES** Petitioner's request to enforce the Court's prior order. Petitioner's related

request for a temporary restraining order is also **DENIED.**

**II.      FACTUAL & PROCEDURAL BACKGROUND**

Petitioner is a transgender woman and longtime lawful permanent resident who came to the United States from El Salvador in 2008 at the age of twelve. (Doc. 1 at 2; Doc. 1-3 at 2-3, 6-7.) In 2020, Petitioner was convicted of committing a lewd act on a child under the age of fourteen and possession of child pornography and sentenced to imprisonment terms of six years and one year, to run concurrently. (Doc. 1 at 8; Doc. 1-3 at 252-56; Doc. 20-1 at 6-17.) The California Board of Parole Hearings determined that Petitioner was appropriate for early release, and on November 26, 2023, Petitioner was released from state custody one year early. (Doc. 1 at 9; Doc. 1-3 at 258.)

On January 17, 2024, the Department of Homeland Security initiated removal proceedings, charging Petitioner as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. (Doc. 1-3 at 37.) That same day, Petitioner was arrested and transported to the Golden State Annex Detention Facility in McFarland, California. (Doc. 1 at 10; Doc. 1-3 at 13, 25.) On May 9, 2024, Petitioner filed an application for protection under the Convention Against Torture. (Doc. 1 at 10; Doc. 1-3 at 41-54.) On May 1, 2025, an immigration judge issued an oral decision, finding Petitioner removable and denying all relief. (Doc. 1 at 10; Doc. 1-3 at 274-77.) On May 6, 2025, Petitioner filed a notice of appeal to the Board of Immigration Appeals, which remains pending. (Doc. 1 at 10; Doc. 1-3 at 279-82.)

On May 22, 2025, Petitioner filed a petition for writ of habeas corpus challenging her prolonged immigration detention on procedural due process grounds. (Doc. 1) On October 16, 2025, the assigned magistrate judge in this case issued findings and recommendations recommending, *inter alia,* that the petition for writ of habeas corpus be granted and for Respondents to be directed to provide Petitioner with an initial bond hearing. (Doc. 25.) On November 14, 2025, this Court adopted the findings and recommendations in full and ordered Respondents to provide Petitioner with a constitutionally compliant bond hearing before an IJ to determine whether Petitioner's detention is warranted.[1] (Doc. 26 at 3.) In accordance with the

---

[1] The relevant part of this Court's November 14, 2025 order reads as follows:

2

Fifth Amendment's Due Process Clause, the order stated that the Government bears the burden of proof by clear and convincing evidence to show that Petitioner's detention is warranted. (*Id.*)

On November 18, 2025, the immigration court scheduled Petitioner for a custody redetermination proceeding pursuant to this Court's order. (Doc. 31-1 at 1.) Petitioner's attorney, Jessica S. Yamane, alleged that when she attempted to access the Executive Office of Immigration Review Courts & Appeals System portal to view the opened custody proceeding for Petitioner, there was no attached hearing notice. (Docs. 30 at 7; 31-8 at 1.) On November 19, 2025, Ms. Yamane submitted a Form EOIR-28, Notice of Entry of Appearance for custody proceedings, which continued to appear as "submitted" but not "accepted" for four days. (*Id.*) Ms. Yamane claims to have repeatedly checked her ECAS account to monitor the status of Petitioner's case but saw that the hearing had yet to be scheduled. (*Id.*) As a consequence of the immigration court's administrator allegedly not accepting Ms. Yamane's Form EOIR-28, neither Petitioner nor Ms. Yamane received notice of the hearing scheduled on November 24, 2025, through ECAS or through written notice.[2] (Doc. 31-3 at 8.)

When the immigration court convened on November 24, 2025 for the bond hearing, Petitioner appeared *pro se* and stated that neither she nor her attorney had been properly noticed regarding the date, time, and scheduling of the bond hearing. (Doc. 30 at 7-8; Doc. 31-3 at 8.) In response, the IJ granted a continuance of the proceeding and explained to Petitioner that she

> Within 30 days of the date of service of this order, Respondent is **DIRECTED** to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is flight risk or danger to the community to justify denial of bond." *Id.* at 1203. In the event that Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond, the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

(Doc. 26 at 3.)

[2] During the November 24, 2025 bond hearing, Ms. Yamane stated that "Loba was also told that her written notice [of the bond hearing] was sent to Golden State Annex, even though she's been detained at California City for over a month now." (Doc. 31-3 at 8.)

3

should advise her attorney that her hearing would be rescheduled to December 1, 2025.[3] (Doc. 31-10 at 2.) On November 25, 2025, Ms. Yamane entered notice of her entry of appearance and filed a motion to continue the bond proceeding for another week. (Doc. 31-9 at 1-3.) The IJ issued a written order denying the motion on November 26, 2025, stating that "given the prior continuance previously granted to [Petitioner], the Court does not find sufficient cause to grant a further continuance of this custody redetermination proceeding." (Doc. 31-7 at 1-2.)

On December 1, 2025, a custody redetermination hearing was held before Immigration Judge Katie G. Mullins via videoconferencing. (Doc. 31-1 at 1.) At the outset of her argument in support of Petitioner at the bond hearing, Ms. Yamane indicated that Petitioner's due process had been violated by the IJ's denial of the second continuance, citing, *inter alia*, that Petitioner was unable to make her witnesses available on such short notice. (Doc. 31-3 at 8-9.) Ms. Yamane also reiterated the alleged the immigration court's failure to provide proper notice for the originally scheduled November 24, 2025 hearing, stating that she "only learned about [Petitioner's] initial hearing on the 24th. And so that left me with one business day previous to the [Thanksgiving] holiday week…to notify my experts to provide testimony during this hearing." (*Id*.)[4] In her written memorandum following the bond hearing, the IJ reiterated that she did not find a continuance "necessary or appropriate," given that Ms. Yamane had filed over 400 pages of supporting documents prior to the December 1 bond hearing and "demonstrated a thorough familiarity with the record of proceeding." (Doc. 31-1 at 1.)

DHS submitted into evidence documentation relating to Petitioner's removal proceedings, conviction records relating to Petitioner's 2020 conviction for a lewd act upon a child under age 14, a FBI "RAP" sheet, documentation from the State of California "Megan's Law Website" identifying Petitioner as a sex offender, and caselaw relating to prosecutorial discretion and mental competency. (*Id*.)

---

[3] The IJ's written memorandum following Petitioner's bond hearing noted that "a continuance of one week in a custody redetermination proceeding is exceedingly lengthy in relative terms on this Court's detained docket." (Doc. 31-1 at 1.)

[4] Ms. Yamane stated that her office was closed for the Thanksgiving holiday from November 26, 2025 through November 30, 2025. (Doc. 31-8 at 2.)

Petitioner submitted over 400 pages of evidence in support of her lack of current dangerousness and flight risk, including Petitioner's declaration, letters and declarations[5] from various friends, family, and community members, a psychological evaluation of the Petitioner conducted by Dr. Luis Perez, certificates of rehabilitation, vocational, and educational courses taken by Petitioner, articles and documents regarding recidivism and flight risk, and evidence relating to Respondent's plans were she to be released from detention.[6] (*Id.*) There were no objections to admission of any of the evidence filed by either party. (*Id.*)

The IJ's written memorandum issued on December 15, 2025 (Doc. 31-1 at 1-8.) At the outset of the memo, the IJ acknowledged that this Court required an individualized bond hearing at which DHS "'must prove by clear and convincing evidence that [Petitioner] is a flight risk or danger to the community to justify the denial of bond.'" (Doc. 31-1 at 2.)  The IJ clarified that DHS "bears the burden to prove by clear and convincing evidence that either [Petitioner's] release would pose a present danger to the community or that the risk of flight is so high that it cannot be adequately mitigated by the setting of an appropriate monetary bond and/or other non-monetary release conditions." (*Id.*)

Preceding her analysis, the IJ invoked her "'extremely broad discretion' in deciding whether to release a respondent on bond" and in determining any specific bond amounts. (Doc. 150-3) (citing *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006)). Such an inquiry, the IJ noted, was to be guided by a list of relevant factors set forth in *Guerra*,[7] including "[Petitioner's]

---

[5] DHS moved the IJ to give less weight to declarations of unavailable declarants, but the IJ declined to do so and gave the written documents full evidentiary weight. (Doc. 31-1 at 1.)

[6] The IJ wrote "Pursuant to Chapter 9.3(e)(6) of the Immigration Court Practice Manual, the Court exercised its discretion to not elicit to hear testimony from any witnesses (including [Petitioner]). (Doc. 15-3 at 3.)

[7] *Guerra* discusses nine factors relevant to the bond determination, namely: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. 24 I. & N. Dec. at 40.

criminal record activity, the recency of such activity, and the seriousness of the offense." (*Id*. at 3) Under *Guerra*, an "Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." (*Id*.) (citation omitted.)

In assessing whether Petitioner presents a current danger to the community, the IJ considered the "recency, extent, and seriousness" of her criminal record, specifically highlighting Petitioner's 2020 conviction of a lewd act upon a child under the age of 14 years old in violation of California Penal Code § 288(A). (*Id*.) Citing BIA and Ninth Circuit case law characterizing sexual offenses perpetrated on children as "exceptionally serious crimes," the IJ noted that the fact that Petitioner "took advantage of her position of authority as a caregiver in the victim's parents' absence and took advantage of a young, vulnerable child" would weigh heavily against her in the danger context. (*Id*. at 4.)

The IJ then considered the evidence presented by Petitioner demonstrating why she no longer represents a danger to the community. First, the IJ recognized that although the State of California had deemed Petitioner appropriate for early release into the community on parole, immigration courts were not bound by determinations of state parole authorities. (*Id*. at 5.) As to Petitioner's rehabilitation efforts and her plans relating to housing, employment, and treatment if released from immigration custody, the IJ noted that Petitioner has remained in various custodial settings for more than six years except for a two-month period where Petitioner was living in reentry program housing. (*Id*.) The IJ found that Petitioner's prolonged custody made difficult to assess rehabilitation given that "good conduct in following prison rules in a controlled setting [is not] persuasive evidence of rehabilitation." (*Id*.) Lastly, regarding the likelihood of future recidivism, the IJ considered the State of California's assessment in 2023 that Petitioner presented an "above average risk" of reoffending, as well as testimony from Petitioner's supporters and from Dr. Perez indicating that she would present a low risk of engaging in violent behavior if provided with appropriate treatment and support. (*Id*. at 6.)

Based on this evidence, the IJ was "left with significant concerns about the further deleterious impact that [Petitioner] would have on the safety and security of the community" if released on bond. (*Id*.) As a result, the IJ found that "the Department has proven by clear and

convincing evidence that Petitioner's release would pose a danger to the community" and that no amount of bond was appropriate in this case. (*Id*.)

The IJ made additional findings that "the Department [had] also established by clear and convincing evidence that [Petitioner] is such a significant flight risk that no bond or non-monetary release conditions could sufficiently mitigate that risk." (*Id*.) The IJ's flight risk analysis considered: (1) that Petitioner was brought to the United States as an adolescent and has significant social and family ties to the U.S., (2) Petitioner is statutorily ineligible for most forms of relief typically available to respondents in removal proceedings because her 2020 conviction constitutes an aggravated felony sexual abuse of a minor and given the conviction's corresponding sentence of imprisonment, (3) the immigration court already denied Petitioner's applications for relief on the merits most recently in an order issued on May 1, 2025, and the BIA affirmed that decision in a lengthy written opinion on the merits, and (4) Petitioner is currently pursuing review before the Ninth Circuit Court of Appeals and represented by counsel. (*Id*.)

Ultimately, the IJ found that Petitioner's limited avenues for relief from removal significantly increased Petitioner's risk of flight, citing multiple BIA cases permitting immigration courts to consider the likelihood that relief from removal will be granted in evaluating a request for bond. (*Id*.) One case held that noncitizens with a greater likelihood of being granted relief from deportation tend to have a greater motivation to appear for a deportation hearing than those who, based on a criminal record or otherwise, have less potential of being granted such relief. (*Id*. at 7) Said plainly, noncitizens convicted of serious crimes such as Petitioner are less likely to appear for future immigration hearings and therefore constitute a greater flight risk. Accordingly, the IJ denied bond on this additional independent basis of flight risk. (*Id*.)

Following the IJ's denial of bond, Petitioner filed an appeal of the IJ's determination to the BIA but has yet to receive a briefing schedule on appeal. (Doc. 15 at 10.) Petitioner remains in immigration custody at the California City Detention Facility in California City, California.

On January 21, 2026 Petitioner filed a motion to enforce this Court's prior habeas order and a motion for a temporary restraining order seeking her immediate release from custody.

(Docs. 28, 29.) Petitioner contends that the bond hearing and the IJ's decision denying Petitioner bond failed to comply with the Court's order because the IJ failed to demonstrate impartiality, misapplied the law, violated Petitioner's due process rights and did not hold the government to its heavy burden of proof. (*See generally* Doc. 30.) Respondents did not file a timely opposition.

**III.   LEGAL STANDARD**

This Court has clear authority to ensure that the Government acts in accordance with its orders granting relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Id*. (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence... review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)). The reviewing court must bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

**IV.   ANALYSIS**

**A. Exhaustion of Administrative Remedies**

As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and

reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft, 335 F.3d 874*, 881 (9th Cir. 2003) (citation omitted); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quotation marks and citation omitted).

Any exhaustion requirement must fully contend with the Court's continuing authority to enforce its orders granting relief in habeas actions. *See Crawford v. Honig,* 37 F.3d 485, 488 (9th Cir.1994). In *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823 at *5 (E.D. Cal. Jan. 29, 2026), this Court previously declined to create an exception to the prudential exhaustion requirement in the context of a detainee's request to enforce a prior writ of habeas corpus under § 2241. Instead, the Court waived the prudential exhaustion requirement after finding that Petitioner satisfied at least one of the *Laing* factors by demonstrating that irreparable harm would result from wrongful detention, particularly given the lengthy time required for an appeal to be decided by the BIA. (*Id*. at n.7.)

Here, Petitioner has not made an explicit showing in her motion to enforce that any of the exceptions to the exhaustion requirement apply at this stage of the proceedings. Nevertheless, because this Court previously found in its prior habeas order that Petitioner had suffered irreparable harm because of her continued detention and given that Petitioner asserts ongoing irreparable harm in her instant request for a temporary restraining order, the Court holds that the requirement of exhaustion is excused. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018).[8]

---

[8] In any event, based upon the outcome here, it would make little sense to delay determination of this

**B. Procedural Defects Prior to the Bond Hearing**

In her motion to enforce this Court's prior habeas order, Petitioner argued that the bond hearing before the IJ was not constitutionally adequate given the procedural defects proceeding the hearing. (Doc. 30 at 255.) Specifically, Petitioner argued that the IJ's denial of her request for a continuance,[9] coupled with the lack of notice provided to Petitioner and her counsel, prevented Petitioner from adequately preparing for the hearing and from submitting "significant testimony." (*Id.*) As a threshold matter, in resolving the prior petition for habeas corpus, this Court did not determine the precise scope of the hearing that would be required to conform with due process, other than to note when the hearing was to occur and to mandate the use of the standard of clear and convincing evidence. (Doc. 26 at 3.) The order did not specify when or how Petitioner would receive notice of the hearing, nor, as Petitioner seems to suggest, did it direct the Assistant U.S. Attorney assigned to Petitioner's federal habeas case to notify Petitioner of a hearing occurring in a different court system. Moreover, Petitioner did not argue any jurisdictional basis for a District Court to resolve alleged procedural defects that do not clearly fall within the scope of enforcing a prior order.

As stated previously, in granting Petitioner's petition for a writ of habeas corpus, this Court directed Respondents "to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder,* 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond." (Doc. 26

motion.

[9] Petitioner cites *Cruz Rendon v. Holder*, 603 F.3d 1104 (9th Cir. 2010), and *Bondarenko v. Holder*, 733 F.3d 899 (9th Cir. 2013), as examples in which the Ninth Circuit found due process violations where an IJ denied a continuance in a bond-hearing context. (Doc. 30 at 25.) However, those cases arise from substantially different procedural postures and factual circumstances and are therefore inapplicable here. In both cases, the Petitioners sought review in the Ninth Circuit of decisions of the BIA affirming immigration court rulings that denied their applications for relief—specifically, cancellation of removal in *Cruz Rendon* and asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") in *Bondarenko*. Furthermore, this is not a case where the IJ's denial of a continuance and exclusion of evidence "prevented [the petitioner] from fully and fairly presenting her case" such that "the outcome of the hearing may have been affected by these procedural deficiencies." *Cruz Rendon,* 603 F.3d at 1111.

at 3.) A broad reading of *Singh* indicates that the Ninth Circuit contemplated a district court's authority to review alleged due process violations beyond those directly related to the burden of proof governing the bond hearing. In *Singh,* the Ninth Circuit declined to resolve whether the IJ violated Singh's due process rights by permitting the government to cross-examine his wife notwithstanding the parties' prior stipulation that her affidavit would be accepted as true without cross-examination on the basis that Singh failed to demonstrate prejudice. 638 F.3d at 1209-1210.

The Court adopts a similar approach here and concludes that it need not determine whether the alleged procedural defects fall within the scope of its prior order because Petitioner cannot demonstrate prejudice. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008) (subjecting due process violations in immigration proceedings to harmless error review); *see also Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926 (9th Cir. 2007) ("In order to prevail on a due process claim that he was denied a full and fair hearing, an alien must also show prejudice—that his rights were violated in a manner so as potentially to affect the outcome of the proceedings") (internal quotation marks and citation omitted).

Here, Petitioner vaguely asserted that the lack of notice and denial of continuance prohibited Petitioner's counsel "from preparing or presenting all the evidence she wanted," but did not elaborate on how additional time to prepare or gather evidence would have materially affected the outcome of the proceeding. (Doc. 30 at 21.) In the hearing transcript, Petitioner's counsel stated that she was unable to notify experts to testify on such short notice but did not identify which experts she was unable to contact or summarize what additional testimony said experts would provide beyond the report submitted by Dr. Luis Perez regarding Petitioner's psychological condition. (Doc. 31-3 at 8-9.) Furthermore, given that Petitioner's counsel filed over 400 pages of supporting documents prior to the December 1, 2025 bond hearing and "demonstrated a thorough familiarity with the record of proceeding" (Doc. 31-1 at 1), the Court does not finds that Petitioner has demonstrated that the Respondents/the IJ failed to comply with the Court's order.

### C. Application of the Clear and Convincing Standard

The Court first considers Petitioner's claims that the IJ applied the incorrect legal standard

at her bond hearing because the IJ failed to apply the correct legal standard by treating the hearing as a bond redetermination request governed by immigration law. (Doc. 30 at 12.) In support, Petitioner cites to the IJ's description of the hearing as part of "continued custody redetermination proceedings" and invocation of her "extremely broad discretion in deciding whether to release a [noncitizen] on bond" and that she "may choose to give greater weight to one [*Guerra*] factor over others, as long as the decision is reasonable." (Doc. 30 at 12.)

Petitioner advances such allegations of legal error notwithstanding the IJ's explicit acknowledgement of this Court's Order directing the immigration court to "conduct an individualized bond hearing in which the Department must establish "by clear and convincing evidence, that [Petitioner] poses a danger to the community or flight risk." (Doc. 31-1 at 2.)  The Ninth Circuit has explained that if the immigration court "expressly cited and applied the relevant case law in rendering its decision," the Court accepts that it "applied the correct legal standard," unless there is an indication that "something is amiss." *Martinez*, 124 F.4th at 785 (cleaned up); *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009).

The IJ appropriately began her analysis by invoking the due process standard for noncitizens at bond hearings as established by *Singh v. Holder*, 638 F.3d 1196, 1202 (2011) (holding that the government must prove by clear and convincing evidence that alien is a flight risk or a danger to the community to justify denial of bond). Furthermore, *Singh* expressly called for immigration judges to apply the factors set forth at *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A.2006) to determine whether noncitizens present a flight risk or danger to the community. 638 F.3d 1196 at 1206.

Though the IJ relied on *Guerra* for the proposition that an IJ may weigh factors so long as the decision is reasonable, *Singh* makes clear that such discretion is limited. *Id.* ("Although an alien's criminal record is surely relevant to a bond assessment, *Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered."). As discussed in greater detail below, the IJ did, in fact, consider both the recency and severity in making her dangerous determination.

Notably, the same IJ in this case inserted the same generic boilerplate language regarding "her extremely broad discretion" in the bond hearing memorandum at issue in another matter previously before this Court. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823 (E.D. Cal. Jan. 29, 2026). In *C.A.R.V.*, this Court held that absent additional indications of abuse of discretion, the mere presence of such boilerplate language is not determinative as to whether of the IJ failed to apply the correct standard as mandated by this Court's Order. 2026 WL 241823 at *6-7. The Court arrives at a similar conclusion in the instant case. Relatedly, the Court declines to infer noncompliance on the part of an IJ where there appears to be a good faith effort to comply with this Court's mandate. *C.f., Y.S.G. v. Andrews,* 2025 WL 2979309 at *9 (E.D. Cal. Oct. 22, 2025) (finding that IJ's statement that she applied the clear and convincing standard "functioned as 'lip service' to a heightened standard that the IJ did not then abide 'in [the IJ's] reasoning and decision.) To be clear, this does not relieve the government of its obligation to meet the clear and convincing burden, nor does it permit IJs to rely on talismanic language in lieu of proper analysis. In any event, the Court does not finds that Petitioner has demonstrated that the Respondents/the IJ failed to comply with the Court's order.

### D. Consideration of Probative Evidence

Petitioner next argues that the IJ abused her discretion by ignoring or failing to meaningfully consider evidence in the record in respect to the issue of Petitioner's dangerousness and flight risk. (Doc. 15 at 23.) Petitioner points to seven categories of such evidence: (1) California state authorities' decision to grant Petitioner's early release from prison, (2) Petitioner's compliance with parole conditions prior to her detention by immigration authorities, (3) Petitioners' rehabilitation efforts (4) Petitioners' release plan and community support pledging financial, logistical, and emotional support following her release from detention, (5) the fact that Petitioner will be placed under highly restrictive conditions of parole if released, (6) Petitioner's psychological evaluation conducted by an expert, and (7) Petitioner's residence in the United States since childhood. (Doc. 30 at 18-20, 23.)

An IJ's failure to cite every piece of evidence in the record does not amount to clear error. *See Larita-Martinez v. INS,* 220 F.3d 1092, 1096 (9th Cir. 2000); *See Cole v. Holder*, 659 F.3d

762, 772 (holding that only "potentially dispositive testimony and documentary evidence" must be specifically addressed). "When nothing in the record or the BIA's decision indicates a failure to consider all the evidence," a court will rely on the agency's statement that it considered all the evidence before it. *See Cole*, 659 F.3d at 771. But when there is an indication that something is amiss, like if the BIA ''misstat[es] the record'' or ''fail[s] to mention highly probative or potentially dispositive evidence,'' courts do not credit its use of a ''catchall phrase'' to the contrary. *Id*. at 771-72.

The memorandum explicitly states that the IJ "carefully consider[ed] all the evidence presented." (Doc. 31-1 at 2.)  In her current motion, Petitioner emphasizes that she submitted "over 400 pages" of supporting evidence. (Doc. 30 at 8.) However, district courts do not demand that an IJ cite every item of evidence in reaching their conclusions. *See Larita-Martinez,* 20 F.3d 1092 at 1096. Here, the IJ specifically considered most, if not all, of the evidence cited by Petitioner but ultimately concluded that Petitioner's past indicates a high risk of reoffending. *See Perez v. Wolf*, 445 F. Supp. 3d 275, 291 (N.D. Cal. 2020) (finding that "inherent in the IJ's order is a conclusion that the Petitioner's evidence was not as convincing as the Government's evidence").

To the extent that Petitioner argues that the IJ placed too much weight on the Static-99R administered to Petitioner as part of her California Board of Parole Hearings process and "devalued" Petitioner rehabilitation efforts while in detention (Doc. 30 at 14-17; 21-22), the Court lacks the ability to "second-guess the immigration judge's weighing of the evidence." *Calmo v. Sessions*, 2018 WL 2938628, at *4 (holding that where the evidence is undisputed, "differences in interpretation of the facts" remain "well within the province of the immigration judge"). Accordingly, the Court finds that Petitioner has not demonstrated that the IJ failed to comply with the Court's order.

### E.  Sufficiency of Evidence to Support IJs' Findings

Petitioner challenges the sufficiency of the evidence supporting the immigration judge's bond determination rather than the constitutionality of the process by which that determination was reached. (Doc. 30 at 17-18, 21.) That is not a question for this Court. In granting the writ of

habeas corpus, the Court ordered a process, not an outcome. Complaints about the conclusion the IJ reached must be presented through the normal immigration appeal process.

### F. Consideration of Alternatives to Detention

Lastly, Petitioner argues that "had the IJ properly applied the burden of proof, she would have found that [Petitioner] is not a danger or flight risk that could not be mitigated" and therefore eligible for "alternatives to detention," including ICE's Intensive Supervision Appearance Program.[10] (Doc. 30 at 24.) Under Ninth Circuit precedent, however, an IJ need only consider "alternative conditions to release" once the IJ determines that the detainee is "neither dangerous nor so great a flight risk as to require detention without bond." *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017); *see also Hernandez v. Lynch*, 2016 WL 711611, at *5 (C.D. Cal. Nov. 10, 2016) ("At [initial bond hearings], Immigration Judges are required to consider alternatives to detention when setting bond amounts."[11] Because the IJ here determined that Petitioner poses a danger to the community and bond is inappropriate, the IJ did not need to consider alternatives to detention. As Petitioner has not demonstrated otherwise, Petitioner's argument necessarily fails.

////

///

///

///

///

///

---

[10] Petitioner claims that, pursuant to this Court's prior order, the IJ was required to make a "predicate assessment" of whether bond would mitigate flight risk. (Doc. 30 at 24.) Petitioner appears to mischaracterize this Court's order, which required the IJ to "consider Petitioner's financial circumstances and alternative conditions of release" only if Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond." (Doc. 26 at 3.) Because the IJ found that Petitioner was in fact a danger to the community and too great a flight risk to justify release on bond, the IJ was not required to explain why bond or release conditions could mitigate risk.

[11] Although Petitioner does not explicitly argue that her due process rights were violated by the IJ's failure to consider alternatives to detention, the Ninth Circuit has rejected the suggestion that due process requires immigration courts to consider alternatives to detention in determining whether to continue to detain a non-citizen under § 1226(c). *See Martinez*, 124 F.4th at 786.

## V.    CONCLUSION AND ORDER

For the foregoing reasons, Petitioner's motion to enforce the Court's earlier order and request for a temporary restraining order are **DENIED**.

IT IS SO ORDERED.

Dated:    **March 13, 2026**

UNITED STATES DISTRICT JUDGE

16